J-A17012-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL WHITE | : | |
| | : | |
| Appellant | : | No. 3188 EDA 2024 |

Appeal from the Judgment of Sentence Entered November 30, 2023
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003119-2022

BEFORE: PANELLA, P.J.E., NICHOLS, J., and NEUMAN, J.

MEMORANDUM BY PANELLA, P.J.E.: **FILED AUGUST 12, 2026**

Michael White appeals *nunc pro tunc* from the judgment of sentence imposed for his convictions of a single count each of rape, rape of a child, unlawful contact with minor, involuntary deviate sexual intercourse ("IDSI"), and involuntary deviate sexual intercourse with a child, two counts of aggravated indecent assault, a single count of sexual assault and corruption of minors, two counts of indecent assault, and a single count of indecent exposure and statutory sexual assault.[1] White challenges the discretionary aspects of the sentence imposed. After careful review, we affirm.

The trial court detailed the relevant factual and procedural history:

---

[1] 18 Pa.C.S.A. §§ 3121(a)(1), 3121(c), 6318(a)(1), 3123(a)(1), 3123(c), 3125(a)(7), 3125(a)(1), 3124.1, 6301(a)(1)(ii), 3126(a)(1), 3126(a)(7), 3127(a), and 3122.1(a)(2), respectively.

On August 8, 2023, [White] waived his right to a jury trial in favor of a waiver trial. He was charged with thirteen (13) separate charges related to sexual misconduct with a minor. …

[The Commonwealth] presented their complaining witness, A.B., who testified that she was 12 [years old] when she first met [White] and that she knew him as her grandmother's boyfriend. She testified that she had lived with her grandmother since she was a toddler and that her mother was deceased. They all lived together at an address on Reach Street in Philadelphia. A.B. testified that [White] was a great father figure to her and that he used to help her with her math homework. She looked up to him as a dad and noted that it was healing to have him there.

A.B.'s first encounter with [White] that made her uncomfortable occurred when she was 12 years old. She explained that they were on the couch with the TV on and he began to reach down and touch her vagina. She stated that she "just went with it" because she trusted him. [White] touched her breasts, and he stopped when she told him that it hurt. There were other encounters where [White] made her "rub his dick up and down for him to climax;" [White] performed oral sex on her; and he looked up porn videos on his [PlayStation 4].[] Other incidents included [White] inserting his fingers inside of A.B. when she was 12, and [White] telling A.B. to "lick his penis like a lollipop," but that never happened.

A.B. testified that [White] made her feel like she had a way of consenting because he would always say if she was uncomfortable or if it ever hurt, they could stop. She attempted to talk to her therapist, but she backed out because she was nervous and got scared. In 2019, A.B. and her grandmother moved to an address on Ross Street after her grandmother and [White] broke up. A.B.'s grandmother and [White] remained friends, [and] A.B. would see [White] a couple of times a month. An incident occurred in the basement when she was 15 years old where [White] leaned up behind her and reached into her pants and began to rub her vagina. [White] also touched her vagina on other occasions in the living room and in the kitchen. Her grandmother was home during some of the encounters. Eventually, A.B. told her therapist, her aunt, and her grandmother about her encounters with [White]. She reported feeling "liberated" after she was able to talk about the experiences.

[The Commonwealth] presented a second witness, Adrian Brown, who is the aunt of A.B. Ms. Brown testified that she knew [White] because he used to date her mom, and she lived at the Reach Street address with the parties. She described [White] as a father figure to A.B., noting that they would play video games, and they were learning to play the guitar together. [White] would also tutor A.B. with her math and other courses in school. Ms. Brown learned of the incidents between [White] and A.B. on a day when she took A.B. to a therapy session. She testified that A.B. was 16 at the time. A.B. told Ms. Brown that [White] touched her breast, there was "oral," and "he would use his fingers."

Next, [the Commonwealth] presented the testimony of Monique Reid, the grandmother of A.B., who testified that she was in a relationship with [White] from possibly 2013 to 2020. She lived with [White] at an address on Reach Street in Philadelphia. Ms. Reid described [White's] relationship with A.B. as a friend, then it became more of a father figure. She stated that they played video games; they would talk and laugh; he tried to teach her karate; "it was a family life." [White] was left alone with A.B. because Ms. Reid trusted him. Ms. Reid first learned of the incidents with A.B. and [White] on February 24, 2022, when A.B. was 16. Ms. Reid testified that A.B. told her that [White] touched her breast and vagina, he showed her his penis and said that she could "lick it like a lollipop." Ms. Reid further stated that he taught A.B. how to "jerk him off," and he would put his fingers inside of her and "jerk her off." There was a [Department of Human Services ("DHS")] investigation in 2018 involving [White] and A.B. with some suspicion about possible grooming, but Ms. Reid did not believe that anything inappropriate was going on between [White] and A.B. [White] moved in with Ms. Reid at the Reach Street address in 2014, but Ms. Reid and A.B. moved out in 2019.

[The Commonwealth's] next witness, Detective [Jeffery] Daly, testified to being assigned to the Special Victims Unit, and to the case involving [White] and A.B. He observed the forensic interview with A.B. and recalled that A.B. became very emotional and started crying when she was shown [White's] photo for identification purposes. The detective was aware of the prior report in 2018 and noted that the detective assigned to that case was deceased, and that the case was closed out.

[White] testified that he was forty (40) years old; he was born and raised in Philadelphia; and he is "technically still employed just suspended indefinitely until this is over." [White] had known Ms. Reid since March 2012, and they became intimate in July 2012. His relationship with A.B. grew into a friendship/father figure, father/daughter relationship over time. In the father figure role, [White] testified that he tutored A.B. in math; "talked about science here and there;" and he noted "we were into art." [White] testified that Ms. Reid and A.B. moved out around 2019, and he continued to see them occasionally at first, then it was like every two weeks or so. Ms. Reid was there most of the time, but she may have left the house to go to the store or to do Uber runs. On cross-examination, [White] agreed that he knew the circumstances of A.B.'s mother's death; he knew that she did not have a dad; he moved into the house soon after; and he became a father figure, tutored, and played games with A.B. [White] testified that he did not do anything sexually inappropriate with A.B.

[The trial court found White guilty of the charges listed above.] On November 30, 2023, the trial court held a sentencing hearing in which the court received testimony from A.B. A.B. testified that she cannot forgive [White], and she feels guilty because she knew that the situation was wrong. She described herself as feeling "worn out," like a rug that's been frayed at the edges. She further testified that she gets an uneasy feeling when people touch her; she tends to look for danger in people for fear of being manipulated again; and she struggles with the idea of intimacy. Moreover, A.B. testified that [White] "changed the trajectory of her life."

[The Commonwealth] presented testimony from Monique Reid who testified that they welcomed [White] in their home when A.B. was eight (8), and he began to fill the role of a "father, a strong male figure, a trusted protector, a tutor, a balance to our lives." Ms. Reid further testified that she noticed a change in A.B. in that her ready smile was gone. For years, she would knock on A.B.'s door and find her crying and distraught. Ms. Reid asked A.B. if [White] ever touched her, but "she kept his secret." Ms. Reid testified that [White] violated the trust of Pennsylvania's citizens as a mandated reporter and employee of the Commonwealth of Pennsylvania.

During [the Commonwealth's argument, it] contended that the gravity of the crime must be considered given that the victim is a child. [It] further asserted that [White] was not an appropriate candidate for community supervision or short-term incarceration, and recommended a sentence of 20 to 40 years, followed by three years of reporting probation.

[White's] attorney provided background information about [White] including that he was 40 years old; a high-school graduate with perfect attendance; the youngest of three siblings; and that he was raised by his mother and father. [White] attended some college, and the longest period of employment was when [White] worked for the state—"the Welfare Department." The attorney clarified that with the state, [White] did not have a role investigating abuse or working with children, but that he worked in income maintenance and unemployment benefits. [White's] attorney requested the court impose a guideline sentence on the lead charge, 7 to 14 years [in] state custody, followed by three years reporting probation as required. [White's] attorney noted that [White] has never served time in a state facility, and that the period of incarceration is going to be very "significant" for someone who has never been in that position before. [White's] attorney conceded that the presentence investigation (PSI) report was [] reviewed and that it did not contain much information because [White] was not interviewed.

After hearing arguments from [the Commonwealth] and [White's] attorney, [White] was given an opportunity to make any statements to the trial court; however, [White] exercised his right to remain silent. It was noted that [White] had a prior record score of zero (0). …

***

In sentencing [White], the trial court noted that there were no mitigating factors, but there were aggravating factors including the length of time that the acts took place, the numerous incidents, the specific conduct described, and a lack of expression of remorse throughout trial and at sentencing. The trial court imposed an aggregate sentence of 15 to 30 years, plus 15 years of reporting probation.

Trial Court Opinion, 9/29/25, at 2-8 (pagination added for ease of reference; record citations and unnecessary capitalization omitted).

White did not file a timely post-sentence motion or notice of appeal. On May 7, 2024, White, through counsel, filed a Post-Conviction Relief Act ("PCRA")[2] petition seeking reinstatement of his post-sentencing and appellate rights. The PCRA court granted this request on June 27, 2024. On June 28, 2024, White filed a post-sentence motion asserting the court erred in relying upon White's silence at sentencing in fashioning its sentence and that the verdict was against the weight of the evidence. On October 29, 2024, the clerk of courts issued an order denying the post-sentence motion by operation of law. White filed a timely notice of appeal and complied with the trial court's order to file a Rule 1925(b) statement. ***See*** Pa.R.A.P. 1925(b). The trial court authored its Rule 1925(a) opinion on September 29, 2025. ***See*** Pa.R.A.P. 1925(a).

White raises one issue for our review:

Whether the lower court erred by holding Mr. White's silence at sentencing against him and increasing his sentence for that reason, in violation of his right to remain silent?

Appellant's Brief, at 2.

This claim presents a challenge to the discretionary aspects of the sentence imposed. Such a challenge does not entitle White to an appeal as of

_____

[2] 42 Pa.C.S.A. §§ 9541-9546.

right. **See Commonwealth v. McCarthy**, 180 A.3d 368, 380 (Pa. Super. 2018).

> Before we address such a challenge, we first determine:
>
> > (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.

**Id.** (citation omitted).

White filed a timely notice of appeal and preserved his issue in a post-sentence motion. Within his brief, he has included a concise statement of the reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f). We therefore turn to whether this concise statement raises a substantial question.

In determining whether a substantial question has been raised "we cannot look beyond the statement of questions presented and the prefatory Rule 2119(f) statement … ." **Commonwealth v. Campbell**, 347 A.3d 707, 717 (Pa. Super. 2025) (internal quotation marks and citation omitted). To present a substantial question the appellant must advance "a colorable argument that the sentence imposed is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental norms which underlie the sentencing process." **Id.** (citation omitted).

White asserts the trial court relied upon his silence at sentencing, an improper factor, in fashioning its sentence. **See** Appellant's Brief, at 8. "[T]he

bare assertion that the court considered an improper sentencing factor [raises] a substantial question where the impermissible factor punishes the exercise of a constitutional right." *Campbell*, 347 A.3d at 717. The Fifth Amendment right to remain silent applies at sentencing. *See Commonwealth v. Bowen*, 975 A.2d 1120, 1124 (Pa. Super. 2009) (quoting *Mitchell v. U.S.*, 526 U.S. 314, 327 (1999)). We therefore find White has raised a substantial question for our review.

We begin with our well-established standard of review:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill-will, or arrived at a manifestly unreasonable decision.

Additionally, our review of the discretionary aspects of a sentence is confined by the statutory mandates of 42 Pa.C.S.[A.] 9781(c) and (d). Subsection 9781(c) provides:

The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:

(1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;

(2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or

(3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.

In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.

42 Pa.C.S.[A.] § 9781(c).

In reviewing the record, we consider:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation (PSI).

(3) the findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S.[A.] § 9781(d).

When imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S.[A.] § 9721(b), including the protection of the public, the gravity of the offense in relation to the impact on the victim and the community, and the rehabilitative needs of the defendant. A sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question, but the record as a whole must reflect the sentencing court's consideration of the facts of the crime and character of the defendant.

Additionally, the trial court must consider the sentencing guidelines. However, where the trial court is informed by a PSI report, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed. Further, where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code.

> The balancing of the sentencing factors is the sole province of the sentencing court, which has the opportunity to observe the defendant and all witnesses firsthand. In conducting appellate review, this Court cannot reweigh the sentencing factors and impose judgment in place of [the] sentencing court where [the] lower court was fully aware of all mitigating factors.

***Commonwealth v. Verma***, 334 A.3d 941, 946-48 (Pa. Super. 2025) (brackets, quotation marks, and some citations omitted).

White argues the trial court abused its discretion in relying upon his silence at sentencing: "The trial court erroneously conflated Mr. White's silence at his sentencing hearing with a lack of remorse. In so doing, it effectively punished him for exercising his right to decline allocution, treating the exercise of that right as an aggravating factor." Appellant's Brief, at 10. White asserts this Court must vacate the sentence and remand for a new sentencing hearing because the court used his silence at sentencing as "the deciding factor[] in its decision to sentence him to consecutive terms of confinement[.]" ***Id.*** at 15.

The Commonwealth submits the trial court did not abuse its discretion, as it imposed a guideline range sentence and, even assuming the trial court considered White's silence, it also relied upon "other, clearly proper factors." Appellee's Brief, at 6. The Commonwealth further suggests trial court appropriately considered White's lack of remorse and significant lack of any mitigation. ***See id.*** at 8.

In the seminal case addressing a defendant's silence at sentencing, this Court held:

- 10 -

[S]ilence at sentencing may not constitute the only factor relied upon to find lack of remorse; to hold otherwise would … constrain defendants to "the Hobson's choice" at sentencing. However, … the trial court may base its findings regarding remorse on other reasons, such as its own observations of the defendant. In the instant case, the trial court indicated that its sentence was based in some part on Appellant's failure to show remorse. The record is unclear, however, as to how much of a factor Appellant's silence was in the court's finding of lack of remorse. We need not remand for such a determination, however, because as explained *infra*, we affirm the sentence on other grounds. It suffices, therefore, to hold that silence at sentencing may not form the basis of finding that a defendant failed to take responsibility for his crimes, and that silence at sentencing may not be the sole basis for finding that a defendant lacked remorse.

Despite the trial court's error, Appellant is not automatically entitled to have his sentence vacated.

***Bowen***, 975 A.2d at 1127 (citations omitted).

"Finally, we note that even if a sentence is predicated on an impermissible sentencing factor, as long as independently valid reasons exist for imposing an aggravated sentence, it must be affirmed." ***Commonwealth v. Salter***, 290 A.3d 741, 751 (Pa. Super. 2023) (citation omitted).

Here, the relevant statement from the trial court is as follows:

I'll be honest with you, the part I wasn't sure of is whether I would [run] any of these charges [consecutively]. And you have every right to remain silent, but that leaves me with my own devices about that silence, right? That leaves me to my own devices of not hearing words of remorse, not hearing words of redeeming qualities, so I don't see any mitigation in this case, right? I just don't.

N.T. Sentencing, 11/30/23, at 24-25.

However, the court's comments did not end there:

- 11 -

I do, in fact, see some aggravation in this case. The length of the time that these acts took place, the plethora of incidents and conducts described, in addition to a lack of expression of remorse. And, so, while I will not [run] all of these charges [consecutively], because, while it is not a legal merger, there is certainly overlap, so this court's view of the most egregious crimes, obviously the rape of a child is the most egregious of the charges I see here. And the aggravated assault, indecent charge of a complainant less than 13, those are the two that stick out to me that do cry for different sentences to be served.

*Id.* at 25.

Just as in **Bowen**, "[t]he record is unclear … as to how much of a factor Appellant's silence was in the court's finding of lack of remorse." **Bowen**, 975 A.2d at 1127. However, the trial court noted a multitude of factors in support of its sentence. **See** N.T. Sentencing, 11/30/23, at 24-25; Trial Court Opinion, 9/29/25, at 13-16 (pagination added for ease of reference). The court took into consideration that White was a father figure to A.B. and "abused his authority and groomed A.B." Trial Court Opinion, 9/29/25, at 14 (pagination added for ease of reference). This abuse went on for years. **See id.**

The court heard from A.B. at sentencing as to how these crimes impacted her life and took this into consideration in its sentence. **See id.** at 14-15. The court noted that although it had a PSI, the PSI did not delve into potential mitigation because White was not interviewed. **See id.** at 15. The record does not reflect why White was not interviewed, however, White did not raise any objection or concern to this development at the time of sentencing. "Importantly, no other evidence was offered as to the rehabilitative needs of [White]." **Id.**

- 12 -

Here, White was sentenced to a guideline range sentence on each count, and White's complaint of an "aggravated factor" only refer to the court's decision to run some charges consecutive with each other. Appellant's Brief, at 10. "[I]t is well settled that defendants convicted of multiple criminal offenses are not entitled to a volume discount on their aggregate sentence." ***Commonwealth v. Lawrence***, 313 A.3d 265, 287 (Pa. Super. 2024) (citations omitted). White was not sentenced to an aggravated range sentence. As such, White was required to show the application of the guidelines herein was clearly unreasonable. ***See*** 42 Pa.C.S.A. § 9781(c)(2). He has failed to do so.

While we agree that the court should not have mentioned White's silence as a factor it considered in imposing its sentence, we find the trial court's sentence is supported by independently valid reasons and it is not clearly unreasonable in light of the conduct at issue. ***See Salter***, 290 A.3d at 751; ***Bowen***, 975 A.2d at 1127; 42 Pa.C.S.A. § 9781(c)(2). We therefore affirm White's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/12/2026